UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROSE M.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 1:17-cv-04672-JRS-DML |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge REVERSE and REMAND the decision of the Acting Commissioner of the Social Security Administration ("Commissioner") that plaintiff Rose M. is not disabled.

---

[1] To protect privacy interests of claimants for Social Security benefits and consistent with a recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions. The plaintiff will therefore be referred to by her first name in this Report and Recommendation.

## Introduction

Plaintiff Rose M. applied in November 2013 for Disability Insurance Benefits under Title II of the Social Security Act, alleging she has been disabled since September 1, 2013. Acting for the Commissioner of the Social Security Administration following a hearing on July 21, 2016, administrative law judge Gladys Whitfield issued a decision on September 21, 2016, that Rose is not disabled. The Appeals Council denied review of the ALJ's decision on October 20, 2017, rendering the ALJ's decision for the Commissioner final. Rose timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Rose argues that the Commissioner's decision should be reversed and remanded because the ALJ's step three decision and her negative credibility determination are not supported by substantial evidence.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review and then address Rose's specific assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Rose is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her

age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for a listed impairment, then the claimant is presumptively disabled and qualifies for benefits. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the

fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her vocational profile (age, work experience, and education) and RFC; if so, then she is not disabled.

The claimant bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her vocational profile and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the

4

conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Rose was born in 1953, was 60 years old as of her alleged disability onset date in September 2013, and was 63 years old at the time of the ALJ's decision. Rose's work history included full-time work as an office manager, a legal secretary, and as a flight ticket agent, all skilled or semi-skilled work. She also had a part-time job for many years (some of which overlapped her other full-time work) as a material handler for Federal Express. In that job, she worked an overnight shift, pushing envelopes and packages along a conveyor belt. The job required constant standing; some of the lifting/pushing/pulling involved very heavy boxes, up to 150 pounds.

At step one, the ALJ found Rose had worked a part-time job at the FedEx facility continuously after her alleged onset date and through November 2015. Rose's earnings from this job were not high enough, however, to constitute substantial gainful activity. (R. 19). At step two, the ALJ identified the following as severe impairments: right shoulder degenerative joint disease and acromioclavicular joint osteoarthritis, multilevel cervical and lumbar degenerative disc disease, and status post spinal stimulator implantation. (R. 20). At step three,

the ALJ decided no listings were met and stated she considered listings 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine).

The ALJ next determined Rose's residual functional capacity (RFC) for purposes of conducting the required analysis at steps four and five. She restricted Rose to light work (six hours of sitting and six hours of standing/walking, and lifting 20 pounds occasionally and 10 pounds frequently) with some additional postural, climbing, and reaching restrictions. (R. 21).

Based on the RFC and the testimony of a vocational expert, the ALJ determined that Rose is capable of performing her past work as a legal secretary, administrative clerk, and ticket agent. She therefore decided at step four that Rose is not disabled and did not make an analysis at step five.

## II. Rose's Assertions of Error

Rose makes two assertions of error. First, she argues that the ALJ's step three analysis lacks substantial evidentiary support because the ALJ's discussion is perfunctory, ignores pertinent evidence, and is without expert medical support. Second, she argues that the ALJ's credibility determination is flawed. The court addresses these alleged errors in turn below.

### A. The Step Three Analysis

The ALJ identified listings 1.02 and 1.04 as the relevant listings. Rose does not contest that listing 1.02 (major dysfunction of a joint) was the proper listing for evaluating her shoulder problems and that listing 1.04 (disorders of the spine) was the proper listing for evaluating the impairments in her cervical spine (*i.e.,* neck)

6

and lumbar spine (*i.e.,* lower back).  She also does not contend that some other listing should have been evaluated.  She argues generally that the listing analysis *in toto* is not properly supported by expert testimony and that, as to listing 1.04, the ALJ ignored pertinent medical evidence related to her cervical spine.

The ALJ's listing analysis is short:  She decided that listings 1.02 and 1.04 were not met or medically equaled because "there is no evidence of ineffective ambulation as defined in 1.00(B)(2)(b), or the inability to perform fine and gross movements effectively, as defined in 1.00(B)(2)(c)."  (R. 21).

The ALJ's statements are directly on point with respect to Rose's lumbar spine degenerative disc disease and her degenerative shoulder disease and arthritis, but they omit any information pertinent to an evaluation of Rose's cervical spine impairment.  There is nothing else within the ALJ's decision that otherwise evaluates whether Rose's cervical spine impairment may possibly meet or equal the requirements of the spine disorders described in listing 1.04.  And, importantly, there is diagnostic evidence, not reviewed by the state agency physicians who gave opinions at the initial and reconsideration stages about whether a listing was met or medically equaled, that appears to be directly pertinent to an evaluation whether Rose's cervical spine disorders are of listing-level severity.

An ALJ may rely on the opinions of state agency physicians at the initial and reconsideration levels of review that no listing was met or medically equaled unless an updated medical opinion is necessary because (1) there are "symptoms, signs, and laboratory findings" in the record suggesting that a judgment of medical

equivalence may be reasonable or (2) there is new evidence that may change the state agency doctors' findings that an impairment is not presumptively disabling at step three. *See* Social Security Regulation 96-6p, 1996 WL 374180 at *3-4.

With respect to Rose's shoulder impairments and lumbar degenerative disc disease, Rose has not identified new evidence or other medical findings not in the record at the time of the reviews by state agency physicians that might alter the analysis whether a listing was met or medically equaled and should have caused the ALJ to obtain an updated medical opinion.

Listing 1.02, which addresses a major dysfunction of a joint—here, Rose's shoulders—requires the resulting effect of an inability to perform fine and gross movements effectively. That inability, by definition under Listing 1.00(B)(2)(c), "means an extreme loss of function of both upper extremities." Rose has not identified any information that was not available to the state agency reviewing physicians suggestive of a loss of function in *both* upper extremities. Thus, as to Rose's shoulder impairments, the court finds that the ALJ's listing determination is supported by substantial evidence.

Listing 1.04 requires that a disorder of the spine, such as stenosis, osteoarthritis, facet arthritis, or degenerative disc disease, result in "compromise of a nerve root or the spinal cord, *and* otherwise meet or equal the conditions described in subcategories A, B, or C. Category 1.04C, which addresses lumbar spinal stenosis, requires the resulting effect of an inability to ambulate effectively. As to her lumbar spine impairment, the ALJ properly noted the absence of any

indication that her impairment resulted in the inability to ambulate effectively, and Rose has not identified any information that was not available to the state agency reviewing physicians suggestive of an inability to ambulate effectively. Thus, here again, the court finds that the ALJ's listing determination is supported by substantial evidence.

The situation is different as to Rose's cervical spine impairments. First, the ALJ's listing discussion does not mention any requirement of the spine disorders listing that caused her to find the listing was not met or medically equaled. Second, there is medical evidence that should have caused the ALJ specifically to evaluate Category 1.04A, which addresses a spine disorder with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss. . . ." Third, that medical evidence was not available to the state agency physicians when they gave opinions that no listing was met or equaled. At the time of those physicians' review—in August 2014 at the initial level and in December 2014 at the reconsideration level—there was scant indication of any serious problem or functional limitations due to cervical spine impairments. Rose had had a CT scan of her neck in early December 2013 after she had fallen, hit her head, and complained of head and neck pain. That imaging showed that she had "advanced cervical spondylosis at C6/C7." Cervical spondylosis "is a general term for age-related wear and tear affecting the spinal disks" in one's neck. *See https://www.mayoclinic.org/diseases-conditions/cervical-*

*spondylosis/symptoms-causes/syc-20370787.* The report of her consultative physical examination about six months later in July 2014 did not contain any references to neck problems and noted that the flexion, extension, lateral bending, and rotation of the neck were normal. (R. 423). Later, things changed.

In January 2015 when Rose was seen by an orthopedist because of shoulder pain and neck pain, her flexion was restricted, new x-rays revealed significant narrowing at the C6-C7 joint space, she was diagnosed with "cervical radiculopathy impingement syndrome," and the doctor opined that the x-ray and examination findings suggested that her symptoms "are due more from her neck than her shoulder." (R. 591-92). A later CT scan of the cervical spine, done in October 2015, found "[m]arked degenerative disc disease" at C6-C7 with spurring "causing bony encroachment upon the neural foramina bilaterally." (R. 540-41). None of this new imaging or the results of examinations by orthopedic specialists was reviewed by the state agency physicians.

Under all of these circumstances—the lack of pertinent listing analysis by the ALJ with respect to the cervical spine and the existence of material diagnostic imaging and examination results that were not reviewed by the state agency physicians—the court must find that the ALJ's step three analysis of Rose's cervical spine impairment is not supported by substantial evidence. Medical evaluation of the later records is required for a reasonable determination whether a listing was met or medically equaled. *See Goins v. Colvin,* 764 F.3d 677, 680 (7th Cir. 2014) (faulting the ALJ's failure to submit an MRI "to medical scrutiny, as she should

have done since it was new and potentially decisive medical evidence"); *Kaminski v. Berryhill,* 894 F.3d 870, 875 (7th Cir. 2018) (ALJs must rely on expert opinions about the significance of medical findings rather than rely on their own determinations); *Moreno v. Berryhill,* 882 F.3d 722, 728 (7th Cir. 2018) (ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion).

### III.   The ALJ's Credibility Determination

Rose also contends that the ALJ's evaluation of the reliability of her subjective reports of her symptoms is flawed. An ALJ's finding about the reliability of a claimant's allegations about the severity of her symptoms and their effects on her functioning is entitled to special deference and is not to be overturned unless patently wrong. *Summers v. Berryhill,* 864 F.2d 523, 528 (7th Cir. 2017). The court disagrees with Rose that the ALJ's analysis reveals such deep logical flaws that the court must find it patently wrong. Instead, the ALJ noted numerous inconsistencies between Rose's statements and the medical evidence, particularly with respect to her back problems and the continued occurrences (or not) of fainting or other syncopal-like episodes. Her emphasis on Rose's ability to work a fairly demanding part-time job for years after her alleged onset date also provided an appropriate contrast to Rose's statements about the severity of her impairments. The ALJ's statement justifying the lack of a cane in the RFC because of the lack of medical documentation of its need correctly applies Social Security regulations. In short,

the ALJ provided numerous supported reasons for deciding not to credit Rose's subjective allegations, and the court has no trouble following the path of her reasoning. The court does not find reversible error in the ALJ's credibility analysis.

The court does not, of course, prevent the ALJ from revisiting her credibility analysis on remand in conjunction with a new step three analysis, supported by medical evidence, of Rose's cervical spine impairment.

## Conclusion

For the foregoing reasons, the Magistrate Judge reports and recommends that the District Judge REVERSE and REMAND the Commissioner's decision under sentence four of 42 U.S.C. § 405(g).

**Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.**

IT IS SO RECOMMENDED.

Dated: February 21, 2019

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system